AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

In the Matter of the Search of

An iCloud account connected to identifier
Email: montesmontesam4@gmail.com

Case No. 26mj4637

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the Northern District of California, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 USC Sec. 952, 960, and 963 | Importation of Cocaine |

The application is based on these facts:

See attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of ______ days *(give exact ending date if more than 30 days:* ____________ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Nicholas Schultz
*Applicant's signature*

Nicholas Schultz, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: August 5, 2026

Janet A. Cabral
*Judge's signature*

City and state: San Diego, California

Hon. Janet A. Cabral, United States Magistrate Judge

**AFFIDAVIT IN SUPPORT OF**
**APPLICATION FOR A SEARCH WARRANT**

I, Nicholas Schultz, Special Agent, Homeland Security Investigations, having been duly sworn, hereby state as follows:

**INTRODUCTION**

1. I make this affidavit in support of an application for a search warrant for information associated with an iCloud account connected to the following identifier:

*Email:* montesmontesam4@gmail.com (“**Subject Account”)**

that is stored at premises owned, maintained, controlled, and/or operated by Apple Inc. (“Apple”), an electronic communications service and/or remote computing service provider located at One Apple Park Way, Cupertino, California, as described in Attachment A for items that constitute evidence, fruits, and instrumentalities of violations of federal criminal law, namely, importation of federally controlled substances and conspiracy related thereto, in violation of Title 21, United States Code, Sections 955, 960, and 963 (“**Subject Offenses”)**, as described in Attachment B. This affidavit is made in support of an application for a search warrant under Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Apple to disclose to the United States copies of the information (including the content of communications) described in Section II of Attachment B. Upon receipt of the information, United States-authorized persons will review that information to locate the items described in Section III of Attachment B.

2. The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers who have personal knowledge of the events and circumstances described herein; my review of documents and reports related to this investigation; and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for the search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. Unless specifically indicated

otherwise, all conversations and statements described in this affidavit are related in substance and in part only, all amounts or sums are approximate, and all dates and times are on or about those indicated.

## TRAINING AND EXPERIENCE

3. I am a Special Agent of Homeland Security Investigations ("HSI") and have been employed since March 2024. I am currently assigned to the HSI Office of the Resident Agent in Charge, Oceanside in the Southern District of California. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

4. During my time with HSI, I have participated in the investigation of various controlled substance trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in controlled substance trafficking investigations, I have gained a working knowledge of the operational habits of controlled substance traffickers, particularly those who attempt to import controlled substances into the United States from Mexico at Ports of Entry.

5. From my training and experience, I am also familiar with the methods used in controlled substance trafficking, the trafficking patterns used by criminal organizations and patterns of controlled substance abuse. I have also discussed with other federal agents, and other, State, and local law enforcement officers the substance of their similar experiences, including the results of their own investigations and interviews.

6. For example, I am familiar with the methods utilized in controlled substance trafficking operations as well as the methods and means used by drug trafficking organizations ("DTOs") to conduct controlled substance trafficking. Specifically, I am familiar with the importation of illegal controlled substances into the United States from

Mexico, the transportation of controlled substances to distribution points within the United States, including San Diego and Los Angeles, and the distribution of controlled substances to destination points throughout the United States. Additionally, I know that once the controlled substances reach their destination cities, they are distributed by wholesale dealers down to street level users often through mid-level distributors. I am also aware that controlled substance trafficking organizations collect and transport controlled substance proceeds from the sale of their controlled substances and often these controlled substance proceeds are transported in the form of bulk currency. Through previous investigations I have obtained knowledge regarding the ordinary meaning of controlled slang and jargon.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for individuals involved in the distribution of controlled substances to work in concert with other individuals and to do so by utilizing cellular telephones and other portable communication devices to maintain communications with co-conspirators in order to further their illicit criminal activities. Drug traffickers often require the use of a telephone facility to negotiate times, places, schemes, and manners for importing, possessing, concealing, manufacturing, and distributing controlled substances and for arranging the disposition of proceeds from the sales of controlled substances. I know that professional drug operations depend upon their ability to maintain their extensive contacts. The telephone enables drug traffickers to maintain contact with associates, suppliers, and customers. As such, those devices can store information about key locations, including residences used as stash locations, homes of co-conspirators, storage lockers where supplies and related illicit items (such as cash proceeds) are kept, and/or public locations where drug deals may happen. They also can store, among others, messages referring to trafficking arrangements and the payment of monies related to trafficking, the names and contact information of co-conspirators, and videos/photographs reflecting drug-trafficking activity. These communications may be conducted through messaging services, including but not limited to iMessages, Short Message Service ("SMS"), Multimedia Messaging Service ("MMS"), voicemail messages,

as well as through the use of third-party communication applications. Additionally, photographs and/or videos, including of, among others, co-conspirators, federally controlled substances, and money proceeds from the trafficking of controlled substances, may be stored in, among others, iCloud Photos. Also, based on my training and experience, pay-and-owe ledgers reflecting the purchase and sale of federally controlled substances may be stored as Notes and/or in iCloud Drive. Much of the aforementioned data is often backed-up on virtual cloud-based services, such as those offered by Apple, including iCloud and iCloud Drive.

## JURISDICTION

8. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by Title 18, United States Code, Section 2711. *See* 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." *See* § 2711(3)(A)(i).

## PROBABLE CAUSE

9. On June 3, 2025, Ana Elizabeth Montes ("**Montes**"), a United States citizen, applied for entry into the United States from Mexico through the San Ysidro Port of Entry. **Montes** was the driver, sole occupant, and registered owner of a 2013 GMC Acadia bearing a California license plate.

10. During primary inspection, a Human and Narcotics Detection Dog alerted to the undercarriage of **Montes's** vehicle near the heater core/engine area.

11. At primary inspection, **Montes** declared one bottle of alcohol and prescription medication to a Customs and Border Protection Officer ("CBPO"). **Montes** told the CBPO that she was crossing the border after attending a hair extension class in Mexico. After being questioned, **Montes** advised the officer that no one had asked her to bring anything to or from Mexico and the vehicle she was driving had not been out of her possession in the last three days. The CBPO referred **Montes** to secondary inspection of the vehicle after the canine alert.

12. During the secondary inspection, **Montes's** vehicle was placed on a vehicle lift. While the vehicle was raised on the lift, a CBPO observed a non-factory compartment underneath the vehicle. The CBPO used a fiberoptic tool to view the inside of the non-factory compartment and observed multiple packages inside the non-factory compartment.

13. A total of 26 packages weighing approximately 26.95 kilograms were removed from the vehicle non-factory compartment.

14. The packages were submitted to Customs and Border Protection's San Ysidro forward operating laboratory for analysis and tested positive for cocaine.

15. During an interview after **Montes** waived her *Miranda* rights, **Montes** was shown a black Apple iPhone 15 that was recovered by a CBPO and **Montes** stated that the phone was hers ("Montes's iPhone"). **Montes** consented to a search of Montes's iPhone and provided the passcode for this device. **Montes** stated that her email address is montesmontesam@gmail.com and that her phone number is *951-643-9954* ("Montes's Telephone Number").

***Search warrant for Montes's iPhone***

16. On June 4, 2025, the Honorable Daniel E. Butcher, U.S. Magistrate Judge for the Southern District of California, in case number 25MJ3134, issued a search warrant authorizing agents to search Montes's iPhone. The subsequent forensic examination of Montes's iPhone revealed that the phone number associated with Montes's iPhone was 951-643-9954, which is the same number **Montes** provided as her own. Analysis also revealed that the IMEI number associated with Montes's iPhone was 357275793608529 and that the IMSI number associated with Montes's iPhone was 311480010235654.

***Search of Montes's iCloud Account under montesmontesam@gmail.com***

17. On November 21, 2025, the Honorable David D. Leshner, U.S. Magistrate Judge for the Southern District of California, in case number 25MJ6409 issued a search warrant authorizing the search of an Apple iCloud account associated with the email address provided by **Montes** of montesmontesam@gmail.com. This warrant was served on Apple Inc. on November 25, 2025.

18. On December 10, 2025, Apple, Inc. responded to the search warrant advising that no Apple accounts associated with the email montesmontesam@gmail.com existed. However, Apple did provide records pursuant to the search warrant parameters which included phone number 951-643-9954, IMEI 357275793608529 and IMSI 311480010235654.

***Search of Montes's Instagram Account***

19. On January 23, 2026, the Honorable Barbara L. Major, U.S. Magistrate Judge for the Southern District of California, in case number 26MJ1074 issued a search warrant authorizing the search of an Instagram account observed during the forensic examination of Montes's iPhone.

20. Meta records associated with **Montes**'s Instagram account indicated the email **Monte's** used for this Instagram account was listed as montesmontesam4@gmail.com.

***Montes has iCloud data associated with two separate email accounts***

21. Upon review of the Apple records associated with **Montes,** it appeared some iCloud contacts were saved under an account utilizing email address montesmontesam@aol.com, but additional data, to include notes and reminders were saved under an account utilizing montesmontesam4@gmail.com, the email believed to be associated with **Subject Account**

22. Based on the fact that a second email account which was not provided by **Montes** is listed on **Montes'** Instagram account and observed in Apple Records connected to **Montes**, I believe **Montes** is the owner of an iCloud account utilizing the identifier of montesmontesam4@gmail.com, **Subject Account**, and that she uses **Subject Account** in connection with violations of the **Subject Offenses**. Based on my familiarity with Apple, as described further below, I believe the information associated with **Subject Account** sought by this application will contain evidence of violation of the **Subject Offenses**.

**BACKGROUND INFORMATION FOR APPLE**

23. Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

24. Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web-browsers or mobile and desktop applications (apps). As described in further detail below, the services include email, instant messaging, and file storage:

a. Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

b. iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages (iMessages) containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

c. iCloud is a file hosting, storage, and sharing service provided by Apple. iCloud can be utilized through numerous iCloud-connected services and can also be used to store iOS device backups and data associated with third-party apps.

d. iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iCloud Backup allows users to create a backup of their device data. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

e. Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

f. Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

g. Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

h. App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

25. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. The account identifier for an Apple ID is an email address, provided by the user. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

26. Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone number(s). The user may

also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address (IP address) used to register and access the account, and other log files that reflect usage of the account.

27. Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

28. Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address (MAC address), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer

service, including communications regarding a particular Apple device or service, and the repair history for a device.

29. Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service (SMS) and Multimedia Messaging Service (MMS) messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

30. Based on my training and experience, I know that individuals working in drug trafficking often use multiple communication platforms in furtherance of their criminal activity, including to communicate and facilitate their offenses. Indeed, based on training and experience, I am aware that, in addition to telephone and text messaging services (*i.e.*, MMS and SMS), other communication platforms, like iMessage and WhatsApp, are also often used by drug traffickers to engage in their illegal activity. These communication services, like telephone and text messaging services, can be used to coordinate payments and meetings, conduct negotiations and other matters relating to the criminal scheme, and to send location data, photos, audio files, and/or videos, concerning their criminal activity, all of which are available from Apple as outlined above. Based on my training and experience, voicemails, audio files, photos, videos, and notes/documents also are often

created and used in furtherance of the criminal activity, which also may be available from Apple as outlined above. Thus, stored communications and files connected to the **Subject Account** may provide direct evidence of the offenses under investigation. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

31. Based my on training and experience, I am aware that evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind at issue here, may be found in the files and records described in Attachment B and available from Apple. For example, iCloud account activity may provide relevant insight into an account owner's state of mind as it relates to the offenses under investigation, such as the owner's motive and intent to commit a crime (*e.g.*, communications indicating a plan to commit a crime) or consciousness of guilt (*e.g.*, deleting account information in an effort to conceal evidence from law enforcement). Communications, notes, contacts, and other information that Apple can produce related to the **Subject Account** also can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation, including addresses and/or vehicles used by the subjects of the investigation. Also, the identification of applications downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation, such as services used to communicate with co-conspirators. Therefore, Apple's servers are likely to contain stored electronic communications and information constituting evidence of the crimes under investigation.

32. Apple's servers also are likely to contain "user attribution" evidence. Such evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, device information, the data associated with the foregoing (such as geo-location, date, and time information), photos, videos, and audio files may be evidence of who used or controlled the **Subject Account** at a relevant time. As an example, because every device has unique hardware and software

identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices – and thereby which user(s) – likely accessed the **Subject Account**. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crimes under investigation.

**PROCEDURES FOR ELECTRONICALLY STORED INFORMATION**

33. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Apple to disclose to the government copies of the records and other information (including the content of communications and stored data) particularly described in Section II of Attachment B. Upon receipt of the information described in Section II of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

34. Federal agents and investigative support personnel are trained and experienced in identifying communications relevant to the crimes under investigation. The personnel of Apple are not. It would be inappropriate and impractical for federal agents to search the vast computer network of Apple for the relevant account and then to analyze the contents of that account on the premises of Apple. The impact on Apple's business would be severe.

35. Therefore, I request authority to seize all content from the **Subject Account**, as described in Attachment B. In order to accomplish the objective of the search warrant with a minimum of interference with the business activities of Apple, to protect the rights of the subject(s) of the investigation, and to effectively pursue this investigation, authority is sought to allow Apple to make a digital copy of the entire contents of the account subject to seizure, as described in Section II of Attachment B. The copy will be provided to me or to any authorized federal investigator. The copy will be forensically imaged, and the images will then be analyzed to identify communications and other data subject to seizure

pursuant to Section III of Attachment B. Relevant data will be copied to separate media. The original media will be sealed and maintained to establish authenticity, if necessary.

36. Analyzing the data to be provided by Apple may require special technical skills, equipment, and software. It also can be very time-consuming. Searching by keywords, for example, often yields many thousands of "hits," each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process. Certain file formats do not lend themselves to keyword searches. Keywords search text. Many common applications do not store data as searchable text. The data may be saved in a proprietary non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases dramatically.

37. Based on the foregoing, searching the recovered data for the information subject to seizure pursuant to these warrants may require a range of data analysis techniques and may take weeks or even months. Keywords need to be modified continuously based upon the results obtained. The personnel conducting the examination will complete the analysis within ninety (90) days of receipt of the data from the service provider, absent further application to this Court.

38. All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of the warrant. Based on training and experience, drug traffickers who import large amounts of highly-valuable narcotics, such as **Montes**, often have worked in drug trafficking for an extended period of time in order to be trusted to import such large amounts of narcotics. Additionally, drug trafficking often involves continuing communication that transpires over the days, week, and months prior to an importation event. As such, this search warrant seeks all materials from Apple for the **Subject Account** for the time-period from May 4, 2025 (Thirty (30) days prior **Monte's** arrest as outlined above), up to and including June 3, 2025 (the day of **Monte's** arrest).

## **CONCLUSION**

39. Based on the forgoing, I request that the Court issue the proposed warrant.

Nicholas Schultz

Special Agent Nicholas Schultz
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 5th day of August 2026.

Janet A. Cabral

HONORABLE JANET A. CABRAL
United States Magistrate Judge
Southern District of California

# ATTACHMENT A

This warrant applies to information associated with the account with the following identifier:

*Email*: montesmontesam4@gmail.com

that is stored at premises, owned, maintained, controlled, or operated by Apple Inc., an Internet Service Provider with its primary computer information systems and other electronic communications and storage systems, records, and data located at One Apple Park Way, Cupertino, California 95014.

# ATTACHMENT B

**I.** Service of Warrant

The officer executing the warrant shall permit Apple Inc. (the ISP), as custodian of the computer files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

**II.** Items subject to seizure from the ISP

a. All subscriber and/or user information, all electronic mail, files, cloud storage, location information, search history, images, text messages, voicemail, histories, buddy or friend lists, contacts, iCloud Drives, iCloud files, iCloud Backup and Restore, photos, notes, videos, calendars, messages profiles, methods of payment, detailed billing records, access logs, transactional data and any other files or records for the account with the following identifier:

Email: montesmontesam4@gmail.com

**III.** The search of the data supplied by the ISPs pursuant to this warrant will be conducted by the Homeland Security Investigations as provided in the "Procedures For Electronically-Stored Information" section of the affidavit submitted in support of this search warrant and will be limited to evidence of violations of 21 U.S.C. §§ 952, 960 and 963 for the period of May 4, 2025, through June 3, 2025, and to seizure of:

a. Communications, records, attachments, files, and data tending to discuss or suggest efforts to import federally controlled substances from Mexico into the United States;

b. Communications, records, attachments, files, and data tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of federally controlled substances from Mexico into the United States;

b. Communications, records, attachments, files, and data tending to identify co-conspirators, criminal associates, or others involved in the importation of federally controlled substances from Mexico into the United States;

d. Communications, records, attachments, files, and data tending to identify travel to or presence at locations involved in the importation of federally controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points; and

e. Communications, records, attachments, files, and data tending to identify the user(s) of the subject accounts, and any co-conspirators involved in the activities in III(a)-(d) above; and

//

f. Communications, records, attachments, files, and data that provide context to any communications or records described above, such as messages sent or received in temporal proximity to any relevant electronic communications and any electronic communications tending to identify users of the subject accounts;

**which are evidence of violations of 21 U.S.C. §§ 952, 960, and 963.**